UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JOSE FERNANDEZ MUNOZ,

                                                **MEMORANDUM & ORDER**

                                                **02-CV-6198 (NGG)**

                    Petitioner,

        -against-
                                                **FILED**
                                                IN CLERK'S OFFICE
                                                U.S. DISTRICT COURT E.D.N.Y.

JOHN BURGE, Superintendent, Auburn              ★ AUG 2 5 2010 ★
Correctional Facility,

                                                **BROOKLYN OFFICE**
                    Respondent.

-------------------------------------------------------------------X

NICHOLAS G. GARAUFIS, United States District Judge.

        Petitioner Jose Fernandez Munoz ("Petitioner") – initially pro se, but now represented by

counsel – seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition (Docket Entry

#1).) He is currently incarcerated at Auburn Correctional Facility, serving a sentence of fifteen

years imprisonment. In his Petition, filed on November 18, 2002, Petitioner challenges his

conviction in New York Supreme Court, Kings County, for Burglary in the Second Degree, in

violation of N.Y. Penal Law § 140.25. The court referred the Petition to Magistrate Judge Lois

Bloom for a report and recommendation. For the reasons set forth below, Judge Bloom's report

and recommendation is adopted as modified and the petition is DENIED.

I.      **BACKGROUND**

        According to trial testimony, on November 10, 1997, Jan Grzyb ("Grzyb") and Jarek

Wiatr left the apartment that Grzyb shares with his mother at 524 40th Street in Brooklyn, New

York. (Resp't Ex. A, Trial Transcript ("Tr.") 453.) When they returned to the building fifteen

minutes later, they saw Petitioner leaving the building with a jacket that belonged to Grzyb and a

coat and leather jacket that belonged to Grzyb's mother. (Tr. 454, 459.) Grzyb asked Petitioner

what he was doing there, but he did not respond. (Tr. 454, 499, 523.) Grzyb attempted to stop Petitioner from leaving. A fight ensued and Grzyb's hand was cut, presumably by a screwdriver later found nearby. (Tr. 457.) Grzyb held Petitioner until the police came. (Tr. 471.) The police found Grzyb's mother's watch, a chain, and five single dollar bills in the pockets of the coat Petitioner was carrying. (Tr. 360.) Grzyb's apartment had been ransacked. Additionally, the window gate was bent, and the lock on the window gate was broken. (Tr. 483.)

Petitioner was charged with three counts of Burglary in the Second Degree, Assault in the Second Degree, Criminal Possession of Stolen Property in the Fourth Degree, Criminal Possession of a Weapon in the Fourth Degree, and Possession of Burglar Tools. On July 17, 1998, a Kings County jury convicted Petitioner of Burglary in the Second Degree. See People v. Fernandez, 286 A.D.2d 444 (N.Y. App. Div. 2001). On August 31, 1998, Petitioner was sentenced as a predicate felon to a prison term of fifteen years.

On direct appeal, Petitioner's appellate counsel argued that Petitioner was denied a fair trial when the prosecutor, in summation, vouched for the complainant, made herself an unsworn witness, and made burden-shifting remarks; and that Petitioner was deprived of due process by the judge's statement that the "proof shows that the defendant was found in possession of property stolen in the burglary," which improperly usurped the jury's role. (Resp't Ex. B at 11-21.) The Appellate Division affirmed the conviction. Fernandez, 286 A.D.2d at 444.

Petitioner, initially proceeding pro se, filed the instant Petition on November 18, 2002, asserting four claims for habeas relief: (1) he was denied the effective assistance of trial counsel as counsel failed to raise that he was mentally incompetent to stand trial; (2) he was denied the effective assistance of appellate counsel; (3) he was denied the right to a fundamentally fair trial because the jury was not allowed to consider the lesser-included offense of criminal trespass; and

2

(4) the evidence presented at trial was legally insufficient to convict him. (See Petition 4-5.)

Subsequently, Petitioner secured counsel to assist him in pursuing post-conviction relief.

On March 18, 2003, Petitioner filed a state post-conviction motion under New York

Criminal Procedure Law§ 440.10 arguing (1) that he was not given a psychiatric examination,

which the trial court had ordered under Criminal Procedure Law § 730; and (2) that his trial

counsel was ineffective for failing to move to dismiss the indictment on the ground of legally

insufficient evidence. (See Resp't Ex. H.)  Petitioner's motion was denied on the merits, People

v. Fernandez, Ind. No. 12082/1997, slip op. at 1 (N.Y. Sup. Ct. April 29, 2003), and the

Appellate Division denied leave to appeal. People v. Fernandez, Ind. No. 12082/1997, slip op. at

1 (N.Y. App. Div. 2004).

Thereafter, Petitioner's counsel sought a writ of error coram nobis in the Appellate

Division, alleging ineffective assistance of appellate counsel. (See Resp't Ex. H.)  Petitioner

argued that appellate counsel should have raised the following issues on appeal: (1) the trial

court improperly handled jury deliberations; (2) the trial court improperly refused Petitioner's

request to submit the lesser-included offense of criminal trespass to the jury; and (3) the trial

court improperly admitted evidence of Petitioner's pre-arrest silence, as well as the prosecutor's

comments on it during summation. (Id.)  The Appellate Division denied the writ of error coram

nobis, People v. Fernandez, 11 A.D.3d 633 (N.Y. App. Div. 2004), and the New York Court of

Appeals denied leave to appeal. (See Resp't Ex. R, Certificate Denying Leave.)

Having unsuccessfully pursued these state remedies, Petitioner returned to this court.  On

May 31, 2005, Petitioner filed a supplemental memorandum of law requesting permission to

amend the Petition to include a claim of ineffective assistance of appellate counsel based on the

grounds that had been raised in Petitioner's writ of error coram nobis. (See Pet'r Supp. Mem.

(Docket Entry #23).) Specifically, Petitoner claims that appellate counsel should have raised the following issues on appeal: (1) the trial court's improper delegation of judicial responsibility to the court officer during jury deliberations; (2) the court officer's improper inquiries into the jury's deliberations; (3) the trial court's failure to disclose the contents of two jury notes to the defense; (4) the trial court gave a coercive <u>Allen</u> charge; (5) the trial court's refusal to submit a lesser-included offense to the jury; (6) the introduction of Petitioner's pre-arrest silence and the prosecutor's comments on it into evidence. This court referred the Petition to Magistrate Judge Lois Bloom for a report and recommendation ("R&R").

## II.     REPORT AND RECOMMENDATION

### A.     Recommendations

As an initial matter, Judge Bloom recommended that the court permit Petitioner to amend his Petition to add the ineffective assistance of appellate counsel claim. Although an entirely new claim would be untimely under the relevant statute of limitations, Judge Bloom determined that this claim is not time-barred because it "relates back" to claims raised in the original Petition. (See R&R (Docket Entry #28) 5.) Judge Bloom found that the additional claim merely amplifies the claims presented in the original petition. (R&R 7.) Therefore, according to Judge Bloom, the original Petition gives fair notice of the new ineffective assistance of appellate counsel claim.

Although many of Petitioner's claims have not been properly exhausted, Judge Bloom proceeded to consider all of his claims on the merits, rather than deny them on procedural technicalities. (R&R 11.) Judge Bloom determined that each claim was meritless and recommended that the court deny the habeas petition.

4

With respect to Petitioner's ineffective assistance of trial counsel claim, Judge Bloom found that trial counsel did an "impressive job representing Petitioner" and that there is nothing to support Petitioner's claim that a psychiatric examination was ever ordered. (R&R 13.) Similarly, Judge Bloom rejected Petitioner's claim that the trial court improperly refused Petitioner's request to submit the lesser-included offense of criminal trespass to the jury, because the such failure is not a basis for federal habeas corpus relief. (R&R 22-24.) Judge Bloom also recommended that this court deny Petitioner's claim that the evidence presented at trial was legally insufficient to convict him, finding that the evidence supports the jury's verdict. (R&R 30.)

Judge Bloom recommended that the court reject Petitioner's claim that his appellate counsel was constitutionally ineffective. Judge Bloom found that the record does not indicate improper contact between the court officer and the jury (R&R 16); that the court officer properly conveyed the juror's inquiry to the judge (R&R 16); that the argument that the trial court withheld two jury notes was unpreserved because trial counsel failed to object to the trial court summarizing the substance of the notes rather than reading them verbatim into the record (R&R 17); that the trial court's <u>Allen</u> charge was not coercive (R&R 20); that Petitioner was not entitled to jury consideration of a lesser-included offense (R&R 24); and that the introduction of Petitioner's pre-arrest silence and the prosecutor's comments on it into evidence was not improper and would not likely have been overturned on appeal (R&R 26).

Judge Bloom recommended that this court issue a certificate of appealability on one issue: appellate counsel's failure to raise the trial court's improper handling of jury deliberations. (R&R 30-31.)

## B. Objections

Respondent objects to Judge Bloom's finding that the new ineffective assistance of appellate counsel claim relates back to the initial Petition. Respondent argues that the new allegations do not amplify the claims in the original petition because they relate to entirely different parts of the trial. (See Resp't Obj. (Docket Entry #34) 2.) Specifically, Respondent asserts that while the original claims are based upon the evidence at trial, the new claim is based upon the jury deliberations, the jury charge, and the summations. (Id.)

Respondent also objects to Judge Bloom's recommendation to grant a certificate of appealability regarding appellate counsel's failure to raise the alleged mishandling of jury deliberations. (Id.) Respondent argues that a certificate of appealability can only be granted if a petitioner makes a substantial showing of a denial of a constitutional right, and that Petitioner has failed to make such a showing. (Id. at 3.)

Petitioner objects to Judge Bloom's recommendation regarding his ineffective assistance of appellate counsel claim only. Specifically, he objects to Judge Bloom's findings regarding three of the grounds asserted for the ineffectiveness claim: failure to raise the trial court's refusal to submit the lesser-included offense to the jury, failure to raise the trial court's improper delegation of judicial duty to the court officer, and failure to raise the trial court's nondisclosure of two jury notes to defense counsel. (See Pet'r Obj. (Docket Entry #35) 12.) Petitioner argues that if these three issues had been raised on appeal, "Petitioner's conviction would likely have been overturned due to the strength of New York law in his favor." (Id.) As such, Petitioner argues that he was denied his constitutional right to effective assistance of appellate counsel, and that the Appellate Division unreasonably applied clearly established Supreme Court law in

deciding to the conttrary.  (Id. (citing People v. Fernandez, 11 A.D.3d 633, 633 (N.Y. App. Div. 2004).)

Additionally, Petitioner argues that if the Petition is denied then a certificate of appealability should issue as to every ground underlying Petitioner's ineffective assistance of appellate counsel claim.  (See Pet'r Obj. 32.)

### C.      Standard of Review

The standard of review for a magistrate judge's report and recommendation depends upon the parties' objections.  Although the court must "make a de novo determination of those portions of the report or . . . recommendations to which objection[s] [are] made," 28 U.S.C. § 636(b)(1)(C), unobjected-to portions may be reviewed for clear error.  Brown v. Ebert, No. 05-CV-5579, 2006 WL 3851152, at *2 (S.D.N.Y. Dec. 29, 2006).  The court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).

No objection has been made by either party regarding Judge Bloom's findings on three of Petitioner's claims: (1) ineffective assistance of trial counsel; (2) fundamental unfairness of the trial because the jury could not consider a lesser-included offense; and (3) insufficiency of the evidence.  As to Petitioner's ineffective assistance of appellate counsel claim, neither party objects to Judge Bloom's recommendations regarding the following three allegations: (1) appellate counsel should have argued that the trial court delivered a coercive Allen charge; (2) appellate counsel should have argued that the trial court invaded the secrecy of jury deliberations; and (3) appellate counsel should have argued that trial court improperly allowed admission of Petetioner's pre-arrest silence and the prosecutor's comments on it into evidence. Judge Bloom recommended denial of each of these claims.  Having thoroughly reviewed the trial

record, the court adopts Judge Bloom's recommendation and denies each of the above claims.[1]

Therefore, the remainder of this Memorandum and Order will discuss the claims to which the

parties have objected.

## III. DISCUSSION

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No.

104-132, 110 Stat. 1214, establishes an extremely deferential standard for federal court review of

state convictions: once a state court has adjudicated a petitioner's claim on the merits, federal

habeas relief is available only if that adjudication "resulted in a decision that was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); see also Mask v. McGinnis, 252

F.3d 85, 90 (2d Cir. 2001) (holding that the phrase "federal law" refers only to "clearly

established Supreme Court precedent"). Clearly established federal law comprises "the holdings,

as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state

court decision." Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams v. Taylor,

529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as

determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case

differently than [the Supreme Court] has on a set of materially indistinguishable facts."

---

[1] The parties also make no objections regarding exhaustion. All claims in Petitioner's habeas petition were initially unexhausted. (R&R 9-10.) Judge Bloom stayed the action and afforded Petitioner the opportunity to return to state court to exhaust his claims. (Id.) Upon Petitioner's return to federal court, Judge Bloom found the Petition to be mixed – that is, containing both exhausted and unexhausted claims. Rather than stay the Petition for a second time or allow Petitioner to delete the unexhausted claims, Judge Bloom recommended denial of the Petition on the merits. (R&R 11.) Neither party objects to Judge Bloom's finding that the portions of the Petition remain unexhausted and the court finds it to be supported by the record. Because unexhausted claims may be denied on the merits, the court proceeds to consider all of Petitioner's claims. 28 U.S.C. § 2254(b)(2).

Williams, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions, but unreasonably applies that principle to the facts of [a] prisoner's case." Id.

Thus, under AEDPA's standard of review, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001) (quoting Williams, 529 U.S. at 411). Although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Id. at 93.

**B.     Amendment of Petition**

AEDPA imposes a one-year period of limitation to a state prisoner's petition for a writ of habeas corpus under § 2254. 28 U.S.C. § 2244(d)(1). If the statute of limitations has already run, any amendment to a habeas petition must "relate back" to the original petition in order to be deemed timely. Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 815 (2d Cir. 2000).

An amended pleading relates back to the original pleading if the claim asserted in the amended pleading "arose out of the [same] conduct, transaction, or occurrence . . . set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(b). The new claim must be based upon the same core facts as the timely claims and must not be based upon events separate in both time and type from those set forth in the original pleading. Mayle v. Felix, 545 U.S. 644, 650 (2005) (citations omitted). Under this rule, a new claim will not relate back to the original claims based on the mere fact that the new claim arises from the "same trial, conviction, or sentence," Mayle, 545 U.S. at 664, or that both old and new claims allege ineffective assistance of counsel. See

9

Johnson v. Ercole, No. 08-CV-1268, 2008 WL 4372649, at *3 (E.D.N.Y. Sept. 22, 2008) (denying leave to amend petition to add claim of ineffective assistance of counsel as to plea bargain where facts underlying new claim did not relate back to initial claim relating to pretrial lineup); Reiter v. United States, 371 F.Supp.2d 417, 423 (S.D.N.Y. 2005) (holding that it is insufficient for a newly asserted claim to simply assert the same general type of legal claim as in the original habeas petition). Relation back turns on the facts underlying a claim, not the legal theory. Mayle, 545 U.S. at 646.

Although not every amendment will relate back, Rule 15 is designed to "provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities." Fama, 235 F.3d at 815. As such, the rule provides that leave to amend "shall be freely given when justice so requires." Littlejohn v. Artuz, 271 F.3d 360, 362 (2d Cir. 2001). Especially in cases that are initially filed pro se and where the question of relation back is a close call, courts tend to favor resolution of the claims on the merits. See Walker v. Poole, No. 03-CV-6088, 2006 WL 1144501, at *2 (W.D.N.Y. April 27, 2006); Fauntleroy v. Artuz, No. 00-CV-2209, (JG), 2005 WL 1899498, at *3 (E.D.N.Y. July 18, 2005).

Here, the initial Petition contained four claims: (1) counsel failed to assert that Petitioner was mentally incompetent to stand trial; (2) Petitioner was denied effective assistance of appellate counsel; (3) Petitioner was denied the right to a fundamentally fair trial because the jury was not allowed to consider the lesser-included offense of criminal trespass; and (4) the evidence presented at trial was legally insufficient to convict Petitioner. Petitioner now seeks to amend the initial Petition to include a claim of ineffective assistance of appellate counsel on three grounds: (1) failure to appeal the trial court's refusal to submit the lesser-included offense of criminal trespass to the jury; (2) failure to appeal the introduction of Petitioner's pre-arrest

silence, including the prosecutor's comments on it, into evidence; and (3) failure to appeal various aspects of the trial court's handling of jury deliberations. This court considers each ground in turn.

First, regarding the issue of the lesser-included offense, Petitioner's third claim in his initial Petition was precisely that the jury was not allowed to consider criminal trespass. (See Petition at 5, 12.) Therefore, the first ground relates back to the initial claim because both claims are based on the exact same underlying facts and portion of the trial. See, e.g., Walker, 2006 WL at *2 (holding that an ineffective assistance of appellate counsel claim based on failure to argue that trial court erred in refusing to call a witness at a Wade hearing relates back to original claim challenging reliability of identification testimony on basis of same facts).

Petitioner's second ground – failure to appeal the admission of Petitioner's pre-arrest silence – resembles Petitioner's claim in the initial Petition that he was not "represented effectively on direct appeal by Counsel." (Petition 5.) Moreover, the initial Petition discusses the Prosecutor's summation, when the Prosecutor made the comments regarding Petitioner's pre-arrest silence. (See Petition 13.) Although the specific elements of the amended ground were not expressed in the initial Petition, the initial Petition put Respondent on notice of the new claim because it relates to the same core facts and portion of the trial. See Fauntleroy, 2005 U.S. Dist. Lexis at *8-9 (assuming ineffective assistance of appellate counsel claim related back to original request to review the record for claims not raised in state court). Therefore, the second amended ground sufficiently relates back to the initial Petition.

Similarly, Petitioner's original Petition provided fair notice to Respondent of Petitioner's third new ground – failure to appeal the trial court's improper handling of jury deliberations. Petitioner's original Petition asserted, inter alia, that his appellate counsel was ineffective for

11

failing to "argue the facts that [pertained] to the case," (Petition 5) and discussed the jury charge and jury deliberations at length. (See Petition at 11-12.) The original Petition did not explicitly connect these two concepts. Nevertheless, it alerted Respondent that Petitioner was challenging the effectiveness of appellate counsel and discussed most of the factual predicates underlying the new ground. This third amended ground therefore relates back to the initial pro se Petition.

Admittedly, relation back of Petitioners second and third grounds is a somewhat close call, but the court is inclined to give the benefit of the doubt to the Petitioner, who initially filed pro se. Furthermore, permitting the amendment provides Petitioner a decision on the merits rather than on procedural technicalities, in accordance with the policy underlying Rule 15. Fama, 235 F.3d at 815. Accordingly, the court adopts Judge Bloom's recommendation and grants Petitioner's motion to amend his Petition.

### C.     Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel was ineffective for failing to raise the following issues: (1) that the trial court impermissibly delegated judicial responsibility to the court officer; (2) that the trial court failed to disclose the contents of two jury notes to defense counsel; and (3) that the trial court improperly refused to submit the lesser-included offense of criminal trespass to the jury. According to Petitioner, the claims actually raised by appellate counsel were much weaker: (1) that the Prosecutor's comments violated Petitioner's right to a fair trial; and (2) that the jury charge was improper.

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. In order for this right to be meaningful, "counsel must be reasonably effective." Lindstadt v. Keane, 239 F.3d 191, 198 (2d Cir. 2001). Under clearly established federal law, in order to prevail on a claim of

ineffective assistance of counsel, a petitioner must demonstrate that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Absent a contrary showing, the courts must presume that counsel's conduct fell within the "wide range of reasonable professional assistance." Id. Strategic choices made after investigation of the relevant law and facts are normally not subject to challenge and the reviewing court must be "highly deferential" to counsel's performance. Id.

Although the Strickland test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel. See Mosby v. Senkowski, 470 F.3d 515, 518-19 (2d Cir. 2006). Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made. Jones v. Barnes, 463 U.S. 745, 754 (1983). Indeed, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Id. at 751-52. A petitioner may, however, establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Ramchair v. Conway, 601 F.3d 66, 73 (2d Cir. 2010).

Applying these principles to Petitioner's claim, this court finds that although Petitioner highlights issues that appellate counsel possibly should have raised, the state court's denial of Petitioner's ineffective assistance of appellate counsel claims was not contrary to or an unreasonable application of federal law.

### 1.    Delegation of Judicial Responsibility

Petitioner alleges that improper contact occurred between the court officer and the jury during the jury deliberations. New York law provides that "[e]xcept when so authorized by the court or when performing adminsterial duties with respect to the jurors, . . . court officers . . . may not speak to or communicate with [the jurors] or permit any other person to do so." N.Y. Crim. Proc. Law § 310.10. The court briefly recounts the unusual course of the jury deliberations below.

On the first day of jury deliberations, at approximately 7:00 p.m., the jury sent a note stating that they could not reach a decision. The court instructed the jury to cease deliberations for the evening. (Tr. 704-705.) At that time, defense counsel objected on the record that the court officer had improperly communicated with the jury foreman as the jury was leaving the courtroom to return to the jury room. (Tr. 705.) Defense counsel argued that "the proper procedure would be to have them go back to the room and come back with a note for the Court to address . . . as opposed to allowing the court officer to conduct that activity." (Tr. 705.) The trial judge stated that "[t]he only question [the foreman asked the court officer] [was] what happens if we can't reach a decision? For the record I told them to put it in the form of a note, and we'll answer that question tomorrow." (Tr. 705-06.) The judge then changed his mind and decided to answer the note at that time. (Tr. 706.) In response to the note, the judge reminded the jurors that they had only been deliberating a few hours, to rest overnight, and that deliberations would resume the next day. (Tr. 707-08).

The next day, the jury foreman announced a guilty verdict. (Tr. 717.) When the court polled the jury, however, Juror Number Nine stated that this was not her verdict. (Tr. 721.) The jurors were then sent back to continue deliberations. Following a recess and in the presence of

all the parties, Jurors Number Two, Five, Seven, and Nine were individually questioned by the trial judge concerning "jury discord." (Tr. 722-29.) The record does not indicate how or why the judge selected these four jurors for questioning.

The judge first questioned Juror Number Two, who explained that she was not sure she could continue to deliberate because she could no longer "take the pressure." (Tr. 723.) She did not mention any specific jurors. Thereafter, the judge ordered Juror Number Five to the courtroom, asking: "Are you Ms. Crowley? What's the problem?" (Tr. 723.) She reported that the deliberations had taken on racial overtones and that the jurors "almost came to blows." (Tr. 723.) When asked whether one or two jurors in particular were primarily responsible, she indicated that one juror – who she did not identify – was very adamant and was using racial slurs. (Tr. 724.) The judge asked if that juror had made any statements "about the length of time staying." (Tr. 724.) She replied that the juror "would be very happy to stay" and continue deliberating as long as possible. (Tr. 724.) Next, the judge called in Juror Number Seven and stated, "I understand you had some conversations with Juror Number Nine." (Tr. 726.) Juror Number Seven confirmed that Juror Number Nine had been the source of the racial comments.

After Juror Number Seven left the courtroom, the judge requested that counsel approach the bench for an off-the-record conference. (Tr. 727-28.) The court officer interrupted, informing the judge that there was "one more juror." (Tr. 727.) Following this unrecorded conference with counsel, the court brought back Juror Number Five and encouraged her to continue with deliberations. (Tr. 728.) The court then held a second off-the-record discussion with counsel, followed by a discussion with Juror Number Nine. (Tr. 729.) After speaking briefly with Juror Number Nine, the court held a third unrecorded conference with counsel before directing that the jury be taken back "upstairs" to continue deliberations. (Tr. 729-30.)

15

Nothing in the record indicates the source of the judge's information as to which jurors had problems, which jurors had spoken to other jurors, which jurors should be questioned, and what their complaints were about.

Petitioner identifies two instances of allegedly improper delegation of judicial responsibility to the court officer which he claims should have been raised by appellate counsel. First, the court officer spoke with the jury foreperson regarding what would happen if the jury could not reach a verdict. Second, "during the period of deliberations in which the judge questioned several jurors individually, it seems exceedingly likely that the court officer was the source of the judge's information about the problems between the jurors, and the identities of the jurors with the problems." (Pet'r Obj. 21.) The court addresses each issue in turn.

Regarding the foreman's question about what would happen upon deadlock, Petitioner argues that there is no way of knowing whether the communication was limited to the one question by the foreperson and the court officer's response that the foreperson should write a note to the judge. (Pet'r Obj. 21.) Petitioner's assertion relies on mere speculation, however. Absent some affirmative indicia in the record of improper communication between the court officer and the foreperson, the Appellate Division would have been unlikely to indulge Petitioner's speculation. See People v. Velasquez, 801 N.E.2d 376, 378 (N.Y. 2003) (noting that a "presumption of regularity attaches to judicial proceedings," which "may be overcome only by substantial evidence," not mere speculation). There is nothing in the record to indicate that events unfolded in any manner other than the way the judge described: the court officer did not give legal instructions to the jury or instruct the jurors on their duties and obligations; he merely conveyed the juror's inquiry to the judge. All of this is entirely proper under New York law. See People v. Vasquez, 2 A.D.3d 759 (N.Y. App. Div. 2003) ("The court officer's relating of

16

messages between the Supreme Court and the jury fell within the scope of the court officer's authority to speak to the jurors in connection with his ministerial duties."). Thus, the cases cited by Petitioner dealing with egregious examples of improper jury contact are inapposite.[2] Had appellate counsel raised this issue on appeal, the Appellate Division would most likely have rejected it. Therefore, the state court did not unreasonably apply Strickland in rejecting Petitioner's claim of ineffective assistance of appellate counsel as to this issue.

Regarding the judge's questioning of individual jurors, Petitioner asserts that the role the court officer apparently assumed in investigating problems in deliberations was in violation of clear New York law, which could have supported automatic reversal. (Pet'r Obj. 21-22.) Here again, Petitioner's claim relies on speculation that the court officer might have done something untoward. Petitioner is correct that the trial court's colloquy with the individual jurors reveals that the trial judge was aware of information about the jury's deliberations that is not found in the trial record. This does not demonstrate, however, that the court officer improperly conveyed information to the judge regarding jury deliberations, as Petitioner claims. Just as likely, the judge could have learned of this information through the contents of one of the two undisclosed jury notes or during one of the several off-the-record discussions with counsel. Indeed, the trial court indicated that he had "received two notes from the jury expressing their sentiments from two different jurors, signed by the foreperson. And that they are possibly being difficult."[3] (Tr. 730.) This more innocent explanation would also explain why defense counsel made no objection during or after the questioning of the individual jurors. Presumably, if there had been a

---

[2] In People v. Khalek, 91 N.Y.2d 838 (1997), for instance, a court officer usurped the court's authority by telling the jury that it would have to be sequestered overnight even though it had reached a verdict. Because of the court officer's improper instruction, the jury did not report its verdict (evidently a complete acquittal) and resumed deliberations the following morning, ultimately convicting defendant of one of the charges.

[3] Although this statement was made after the judge had questioned the individual jurors, it does not preclude the possibility that he had received the notes earlier. Beyond the judge's statement, the contents of the two notes are unknown as they were lost at some point after trial.

hint of improper conduct by the court officer, defense counsel, who had raised just such a complaint the day before, would have made an objection on the record. In light of this plausible explanation for the judge's knowledge of the jury discord, coupled with defense counsel's silence and New York's "presumption of regularity in judicial proceedings," Velasquez, 801 N.E.2d at 378, the Appellate Division would likely have rejected Petitioner's claim of improper delegation, had his appellate counsel raised it. Therefore, the state court did not unreasonably apply Strickland in rejecting Petitioner's claim of ineffective assistance of appellate counsel as to this issue.

### 2.    Nondisclosure of Jury Notes

Petitioner claims that appellate counsel should have raised the trial court's failure to disclose two jury notes to the defense. After further deliberations following the judge's questioning of individual jurors, the judge had the jurors return to the courtroom. The trial judge stated that he "received two notes from the jury expressing their sentiments from two different jurors, signed by the foreman. And that they are possibly being difficult, and they are being a deadlock, and they can't reach a decision." (Tr. 730.) The judge did not read the contents of the notes aloud and provided no further details. Following this comment, the judge delivered an Allen charge. See Allen v. United States, 164 U.S. 492 (1896). After the jury left the courtroom, defense counsel moved for a mistrial. He objected to the trial judge giving the jury an Allen charge because he believed it would unduly pressure Juror Number Nine to reach a verdict. He added that the Allen charge took him by surprise because he did not have advance notice that it would be given. He did not, however, complain that the court had not read the two notes in their entirety. (Tr. 733.) The judge responded:

18

Isn't that something? I just asked you before if both sides were, if your opinion was you wanted to consent to a mistrial if you thought it was appropriate. And you said, I'd rather not do that. I'll leave it to your judgment.

(Tr. 734.)

New York law provides that when a deliberating jury requests additional information or instruction, "the court must direct that the jury be returned to the courtroom and after notice to both the people and counsel for the defendant[,] . . . must give such requested information or instruction as the court deems proper." N.Y. Crim. Proc. Law § 310.30. Meaningful notice to counsel, as the Court of Appeals has explained, requires disclosure of the precise language used in a jury note, not merely its substance. See People v. O'Rama, 78 N.Y.2d 270, 276-77 (1991). Without this specific information, "counsel cannot participate effectively or adequately protect the defendant's rights" in suggesting appropriate responses to the court. Id. at 277. In the context of a deadlock note which results in an Allen charge, "the court's failure to notify counsel of the note's contents, which result[s] in a denial of the right to participate in the charging decision, [is] inherently prejudicial," and thus not subject to harmless error analysis. Id. at 280.

In this case, there is no doubt that the court's handling of the two jury notes did not strictly comply with the procedure outlined in O'Rama, as the note was not read aloud into the record. Less clear is what notice, if any, defense counsel had of the note before the court called in the jury to respond to it. The judge's response to counsel's Allen charge objection – that he had "just asked [counsel] before" if he wanted to consent to a mistrial – suggests that there might have been off-the-record discussions between the court and counsel regarding the notes and the court's response. Some unrecorded discussion necessarily took place as the mistrial colloquy the trial court alluded to appears nowhere in the record before this court. The extent to which the notes were discussed, of course, is unknown.

19

Because trial counsel did not object to the court's failure to read the notes aloud, however, the issue was unpreserved for appellate review. Despite this fact, Petitioner contends that appellate counsel should have raised the issue, arguing that an O'Rama violation is per se reversible error, regardless of whether trial counsel objected. At the time Petitioner filed his appeal, the question of whether an O'Rama violation required preservation turned on the amount of notice counsel had. In O'Rama itself, preservation was not required where the court delivered an Allen charge in response to a jury note without allowing input from counsel, and then affirmatively denied counsel's requests for disclosure of the note's contents. Id. at 275-76. On the other hand, preservation was required where, "when given the opportunity to meaningfully participate immediately following the court's response, defense counsel never argued that the court's failure to read the note verbatim deprived him of knowledge of its substance nor argued that the court's failure to consult him prior to responding deprived defendant of due process or effective assistance of counsel." People v. Cintron, 709 N.Y.S.2d 67, 68 (App. Div. 2000); see also People v. Neal, 701 N.Y.S.2d 393, 394 (App. Div. 2000) (rejecting O'Rama claim as unpreserved because "although one portion in the jury's second note to the court was not read into the record, counsel was aware of the second note's existence and was not deprived of an opportunity to read it").

Petitioner's case seems closer to Cintron than to O'Rama, especially given the trial court's reference to previous discussions with counsel following his objection to the charge. Given that there was a reasonable chance the argument would have been rejected by the Appellate Division as unpreserved, this court cannot find that Petitioner's appellate counsel was ineffective for failing to advance it, especially in light of the deference to the state court's determination mandated by AEDPA. Indeed, a dissenting opinion issued several years after

Petitioner's appeal took the position that preservation was required on facts similar to those presented here. People v. Kisoon, 801 N.Y.S.2d 69, 73-74 (App. Div. 2005) (Schmidt, J. dissenting) ("[A]lthough the court did not read the note verbatim or invite defense counsel to participate in formulating the response, it did not prevent counsel from reading the note or from suggesting or commenting on the response to the jury, nor did it refuse counsel an opportunity to make a record of any objections."). Under the circumstances, the court is not convinced that the state court unreasonably applied Strickland in rejecting Petitioner's ineffective assistance of appellate counsel claim as to the O'Rama issue.

### 3. Refusal to Submit Lesser-included Offense

Petitioner alleges that appellate counsel was ineffective for failing to raise the trial court's refusal to charge the jury with the lesser-included offense of criminal trespass in the second degree. Judge Bloom found that the trial court properly withheld the lesser-included offense from the jury because "the trial record makes clear that [P]etitioner was carrying property that belonged to Jan Grzyb and his mother when he encountered Mr. Grzyb." (R&R 22-23). Petitioner argues that Judge Bloom's conclusions are legally erroneous because of the conflicting evidence as to whether or not Petitioner was carrying Mr. Grzyb's property. (Pet'r Obj 18). Therefore, he claims, the trial court improperly refused to submit the criminal trespass charge to the jury as a lesser-included offense of burglary in the second degree. (Id.)

A defendant is entitled to a lesser-included offense charge only where there is a "reasonable view of the evidence to support a finding that the defendant committed the lesser offense but not the greater." People v. Glover, 57 N.Y.2d 61, 63-64 (1982). The lesser-included offense requested by Petitioner's trial counsel – criminal trespass in the second degree – is defined as knowingly entering or remaining unlawfully in a dwelling. N.Y. Penal Law § 140.15.

21

The intent requirement excludes situations where someone enters upon premises accidentally, or honestly believes that he is licensed or privileged to enter. In such a case, the person does not enter knowingly and therefore has not committed criminal trespass. See People v. Basch, 36 N.Y.2d 154, 159.

Petitioner's defense theory at trial was that he was helping an acquaintance move out of a nearby building when, moments after Grzyb's apartment was burglarized, he mistakenly entered Grzyb's building carrying some of his acquaintance's belongings. (Tr. 580.) If the jury accepted Petitioner's account of events, it could not convict him of any crime, much less the lesser-included offense of criminal trespass. If it disbelieved his story and credited the prosecution's evidence that Petitioner was carrying Grzyb's property, the jury could convict him of the greater offense of burglary. The only way the jury could convict him of the lesser offense but not the greater is if it partially believed his story – that is, if they believed that he intentionally went into the wrong apartment building for no apparent reason carrying his acquaintance's possessions, just after someone else, by some unlucky coincidence, had robbed Grzyb's apartment. This is not a "reasonable view of the evidence." Glover, 57 N.Y.2d at 63-64 (emphasis added). Therefore, the trial judge did not err in refusing to charge the jury on the lesser-included offense of criminal trespass. Accordingly, the state court did not unreasonably apply Strickland in rejecting Petitioner's claim of ineffective assistance for appellate counsel's failure to raise this meritless argument.

### D.    Certificate of Appealability

The standard for issuing a certificate of appealability is whether "jurists of reason would find it debatable whether the petition states a valid claim." Slack v. McDaniel, 529 U.S. 473, 478 (2000). The course of jury deliberations in this case was highly unusual and, between the

22

lost jury notes and the numerous unrecorded conversations between the court and counsel, the record leaves much to be desired. While the claims discussed above regarding the jury deliberations were not guaranteed to succeed on appeal, appellate counsel probably should have raised them. Indeed, were it not for the highly deferential standard of review AEDPA demands of a federal habeas court, the court might well reach a different conclusion. Even under the prescribed standard of review, Petitioner's claims regarding jury deliberations are strong enough that "jurists of reason could find [them] debatable." As such, a certificate of appealability should issue for Petitioner's claim that appellate counsel was ineffective for failing to raise the trial court's delegation of judicial responsibility and nondisclosure of jury notes.

## IV.    CONCLUSION

As set forth above, Judge Bloom's report and recommendation is adopted as modified. The Petition for habeas corpus is DENIED. A certificate of appealability will issue for Petitioner's claim that appellate counsel was ineffective for failing to raise the trial court's delegation of judicial responsibility and nondisclosure of jury notes.

SO ORDERED.

s/Nicholas Garaufis

Dated: Brooklyn, New York
      August 20, 2010

NICHOLAS G. GARAUFIS
United States District Judge